IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY BLACKSTON              :         CIVIL ACTION
                               :
        v.                     :
                               :
NEW JERSEY TRANSIT             :
CORPORATION, et al.            :         NO. 10-878

<u>MEMORANDUM</u>

Dalzell, J.                              October 27, 2010

        Plaintiff Anthony Blackston sues defendants, New Jersey

Transit Corporation ("NJT") and three of its employees, George

Wiseman, Andrew Pawlik, and William McErlane, alleging violations

of 42 U.S.C. §§ 1983, 1981, and 2000E <u>et</u> <u>seq.</u>, as well as the

Pennsylvania Human Relations Act ("PHRA").  NJT, together with

Wiseman and Pawlik, filed a motion for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c), and McErlane later filed his

own Rule 12(c) motion.  Both motions assert plaintiff's failure

to state a claim upon which relief could be granted.  For the

reasons set forth below, we will grant the motions.


I.    **Factual Background**

        In the posture of Rule 12(c) motions, we essentially

proceed as we would on a Rule 12(b)(6) motion.  As our Court of

Appeals has instructed, "[w]hen a Rule 12(c) motion alleges

plaintiff's failure to state a claim upon which relief can be

granted as here, we analyze the motion under the same standard as a Rule 12(b)(6) motion to dismiss." Ober v. Brown, 105 Fed. Appx. 345, 346 (3d Cir. 2004) (citing Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we must "accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom." Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Moreover, courts may "consider [not] only allegations in the complaint, [but] exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (internal quotation marks omitted). A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint." Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis omitted).

Blackston alleges in his amended complaint that he is a black male who began employment with NJT as an electrician in August of 2005. Am. Compl. ¶¶ 11-13. At about 10:30 pm on the evening of August 4, 2008, Blackston alleges that he was sitting

with a co-worker in the cafeteria of the Morrisville, Pennsylvania NJT railyard, awaiting his nightly assignment. Id. ¶¶ 14-15. On the table before them was a newspaper, opened to page 6, revealing "an attractive female model in an advertisement." Id. ¶ 16.

At this point, defendant McErlane, a white male, approached Blackston's table on his way to his own table and "deliberately" walked behind Blackston. Id. ¶¶ 3, 17-18. As he did so, Blackston felt someone make contact with his back. Id. ¶ 19. Blackston turned and beheld "McErlane imitating inappropriate sexual gestures consisting of but not limited to humping, grinding, and rubbing his penis and genitals against his back mimicking sexual acts," all the while mimicking "sexual sounds." Id. ¶¶ 20-21. Blackston demanded an explanation of McErlane's conduct, and McErlane told him "that looking at the picture of the model on page six of the Trentonian Newspaper made him react as he did." Id. ¶ 22. McErlane then "continued to smile and grin maliciously at the Plaintiff as he took his seat." Id. ¶ 24.

According to Blackston, he immediately sought the foreman on site -- defendant Pawlik, a white male -- to report McErlane's behavior, and to request that Pawlik meet with

3

McErlane and him.  Id. ¶¶ 4, 26-27.  At the ensuing meeting --
which Blackston, Pawlik, McErlane, and another foreman, Mike
Belmont, attended -- Blackston explained that McErlane had
engaged in "inappropriate conduct" to which Blackston objected.
Id. ¶ 31.  Later, Blackston also notified Leroy Cooper (a black
general foreman at the Morrisville railyard) as well as defendant
Wiseman (the white assistant manager of the Morrisville railyard)
regarding McErlane's behavior.  Id. ¶ 5-6, 30-32.  Blackston
alleges that neither of these supervisors took disciplinary
action against McErlane and that Wiseman failed to report
McErlane's behavior to the Equal Employment Opportunity ("EEO")
office of NJT, as NJT's policies and procedures allegedly
required.  Id. ¶¶ 31-32.  This led Blackston to realize "that New
Jersey Transit Corporation's management team was not going to
properly investigate this matter."  Id. ¶ 33.  In fact, according
to Blackston, "claims made by black employees are generally
ignored and investigations are not followed through with."  Id. ¶
37.  Consequently, Blackston "sent a letter to the Governor of
the State of New Jersey requesting that this matter be properly
investigated," and contacted NJT's EEO office to provide a
statement and file an internal complaint against McErlane.  Id.
¶¶ 33-35.

Blackston admits that a "charge . . . was finally filed against Defendant McErlane" -- leaving unclear whether it was filed before Blackston contacted the Governor of New Jersey and NJT's EEO office -- but alleges that NJT never resolved the charge or explored it further at a hearing "to address [McErlane's] inappropriate and illegal sexual behavior toward Plaintiff." Id. ¶ 38. Blackston also claims that after notifying the Governor and the NJT EEO office, "he began to experience retaliatory treatment by Defendants." Id. ¶ 36. Specifically, NJT allegedly filed a charge against Blackston for his reaction to McErlane's behavior, and asked Blackston to provide a recertification of his entitlement to leave under the Family Medical Leave Act ("FMLA") five months after Blackston furnished his initial medical certification and before Blackston had exhausted his allowable days under the FMLA. Id. ¶¶ 39-41.

According to Blackston, "[d]ue to all Defendants [sic] failure to address Defendant McErlane's sexual harassment against Plaintiff, and the subsequent racial discrimination and retaliation that Plaintiff was being subjected to," Blackston filed claims with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRA). Id. ¶ 43. The EEOC issued a "notice of right to sue within 90

days" against NJT on November 25, 2009.  <u>Id.</u> ¶ 45; Ex. to Am.

Compl.  Plaintiff filed this action on March 2, 2010.


## II.  <u>Analysis</u>

As noted, we analyze a Rule 12(c) motion for judgment

on the pleadings under the same standard as a Rule 12(b)(6)

motion.  <u>Ober</u>, 105 Fed. Appx. at 346.  "[O]nly a complaint that

states a plausible claim for relief survives a motion to

dismiss," giving rise to a "context-specific" inquiry that

"requires the reviewing court to draw on its judicial experience

and common sense."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950

(2009).  In the course of such an inquiry, "[f]actual allegations

must be enough to raise a right to relief above the speculative

level," <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007),

though plaintiffs need only "nudge[] their claims across the line

from conceivable to plausible."  <u>Id.</u> at 570.  In essence, a

plaintiff must provide "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary

element."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d

Cir. 2008) (internal quotation marks omitted).

Moreover, the Supreme Court teaches that a pleading may

not simply offer "labels and conclusions," <u>Twombly</u>, 550 U.S. at

555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 129 S. Ct. at 1949.

Blackston alleges violations (1) by McErlane, of Blackston's Fourteenth Amendment right to equal protection under 42 U.S.C. § 1983; (2) by NJT and Wiseman,[1] of Blackston's rights under 42 U.S.C. § 1981; (3) by NJT, Wiseman, Pawlik, and McErlane, of 42 U.S.C. §§ 2000E et seq. ("Title VII") based on race, sex, harassment, and retaliation; and (4) by NJT, Wiseman, Pawlik, and McErlane, of the PHRA.  Am. Compl. ¶¶ 48-67. Defendants move for dismissal of all of these claims under Rule 12(c), and we will consider each claim in turn.

A.   Jurisdiction

Blackston asserts jurisdiction founded on diversity of citizenship under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331.  While defendants' Rule 12(c) motions do not explicitly challenge the jurisdictional

---

[1]Blackston originally asserted Counts II, III, and IV against Leroy Cooper as well, but on July 29, 2010, we dismissed the claims against Cooper because Blackston failed to serve him.  Order ¶ 2, July 29, 2010.  We will thus not further consider the claims against Cooper.

basis of Blackston's complaint, "[a] federal court has the obligation to address a question of subject matter jurisdiction <u>sua sponte</u>." <u>Meritcare v. St. Paul Mercury Ins.</u>, 166 F.3d 214, 217 (3d Cir. 1999), <u>abrogated on other grounds by</u> <u>Exxon Mobil Corp. v. Allapattah</u>, 545 U.S. 546 (2005).

To invoke diversity jurisdiction, a plaintiff is "required to plead that he is a citizen of a particular state and that the defendants are citizens of a different state or states." <u>Johnson v. New York</u>, 315 Fed. Appx. 394, 395 (3d Cir. 2009). Blackston fails to meet this requirement, alleging only that:

> The Plaintiff is a citizen of the Commonwealth of Pennsylvania. The Defendant, New Jersey Transit Corporation maintains their principal offices in the State of New Jersey. The remaining defendants conduct their business on behalf of Defendant New Jersey Transit Corporation through the Morrisville, Pennsylvania railyard located at 15 My Lane, Morrisville, PA 19057.

Am. Compl. ¶ 7. Because this allegation does not negate the possibility that one of "[t]he remaining defendants" is a citizen of Pennsylvania, thus eliminating complete diversity between the parties, Blackston has not established that we have diversity jurisdiction under 28 U.S.C. § 1332.

But Blackston also alleges that "[t]he United States District Court for the Eastern District of Pennsylvania properly

maintains original subject matter jurisdiction over the instant action pursuant to 28 U.S.C [sic] Section 1331," id. ¶ 8, since "[t]his action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e) [sic], 42 U.S.C. Sections 1981 and 1983." Id. ¶ 10. Because we are satisfied that this action indeed "aris[es] under the Constitution, laws, or treaties of the United States," we have federal question jurisdiction over this subject matter under 28 U.S.C. § 1331.

B.    Count I: Violation of 42 U.S.C. § 1983

Under Count I, Blackston argues that "[t]he sexual harassment that Plaintiff was subjected to by Defendant McErlane was unwelcome. Not only was the harassment subjectively offensive but a reasonable person subjected to the same condition would have found the conduct offensive as well." Am. Compl. ¶ 49. Because "Defendant McErlane's conduct was willful, wanton, malicious, and in reckless disregard to Plaintiff's civil rights," Blackston contends that he "is entitled to receive an award for punitive damages." Id. ¶ 51.

Defendants NJT, Wiseman, and Pawlik urge that to the extent Blackston meant to direct Count I against them, "it does not allege facts sufficient to place [them] on notice of the

9

claims against [them] and should be dismissed as to [them]."
NJT, Wiseman, & Pawlik's Br. in Supp. of Mot. for J. on the
Pleadings ("Joint Brief") at 9, 24.  We do not construe the
Amended Complaint to assert Count I against NJT, Wiseman, and
Pawlik, since no mention is made of them, and therefore we need
not dismiss this claim as to them.

McErlane, for his part, argues that "Plaintiff's claim
is fatally flawed as Plaintiff has not alleged that Defendant
McErlane acted under 'color of state law.'"  McErlane's Br. in
Supp. of Mot. for J. on the Pleadings ("McErlane Brief") at 9.
It is certainly true that "[t]o state a claim under § 1983, a
plaintiff must allege the violation of a right secured by the
Constitution and laws of the United States, and must show that
the alleged deprivation was committed by a person acting under
color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).
Moreover, "[t]he traditional definition of acting under color of
state law requires that the defendant in a § 1983 action have
exercised power possessed by virtue of state law and made
possible only because the wrongdoer is clothed with the authority
of state law."  Id. at 49 (internal quotation marks omitted).

McErlane claims that "what Plaintiff alleges is an
isolated incident of horseplay by a co-employee which had no

connection to the State of New Jersey or Defendant McErlane's position with Defendant NJT." McErlane Brief at 11. In response, Blackston merely re-asserts that "defendant William McErlane, a state employee, was personally involved in depriving Plaintiff's [sic] of his rights secured under the Constitution." Pl.'s Resp. to Def. McErlane's Mot. for J. on Pleadings ("Pl.'s Resp. to McErlane Mot.") at 9. Because we agree that Blackston has not alleged any facts suggesting that McErlane's alleged behavior was "made possible only because [he] is clothed with the authority of state law," West, 487 U.S. at 49, Blackston has not made out a § 1983 claim against McErlane. Accordingly, we will dismiss Count I in its entirety.

C.    Count II: Violation of 42 U.S.C. § 1981

Under Count II, Blackston claims that "Defendants New Jersey Transit Corporation, Leroy Cooper, and George Wiseman are strictly liable to Plaintiff for violations of 42 U.S.C [sic] Section 1981." Am. Compl. ¶ 53. Blackston argues that "Plaintiff was subjected to a charge being filed against him for conduct unbecoming a New Jersey Transit Corporation employee in direct retaliation for his notifying said offices of Defendant McErlane's illegal conduct. In addition, Plaintiff's Family

Medical Leave was unjustly scrutinized not even five months after its initial approval." Id. ¶ 54.

NJT responds with jurisprudence from our Court of Appeals holding that "the express cause of action for damages created by Section 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in Section 1981 by state governmental units." Joint Brief at 14 (quoting McGovern v. City of Phila., 554 F.3d 114, 121 (3d Cir. 2009)).

Blackston does not directly address this argument, but the following might constitute an oblique response:

> A plaintiff can not [sic] prevail under 42 U.S.C [sic] Section 1983 without establishing an underlying violation of federal law. To establish a claim under this section, the plaintiff must show the deprivation of a right secured by the Constitution and the laws of the United States. Plaintiff has successfully established that he has an underlying claim pursuant [sic] Title VII and 42 U.S.C. section 1981.

Pl.'s Resp. to Defs.' Mot. for J. on Pleadings ("Pl.'s Resp. to Joint Mot.") at 14. To the extent that this represents Blackston's attempt to assert a claim against NJT based on violations of 42 U.S.C. § 1983, it does not cure his failure to lodge a complaint that includes such a claim. Because NJT correctly contends that a plaintiff has no private right of action against state actors under § 1981, and because Blackston

made no claim under § 1983 against NJT in his amended complaint, we will dismiss Count II as to NJT.

Defendant Wiseman contends that Blackston's

> only allegation as to defendant Wiseman is that he was allegedly notified at some point about the incident [with McErlane] but failed to take any further action on his own. Neither [Wiseman nor Pawlik] is factually alleged to have engaged in any intentional discrimination as to the plaintiff.

Joint Brief at 26. To this Blackston responds:

> In the case at bar, Plaintiff was discriminated against and denied equal protection due to his race. New Jersey Transit Corporation, Defendants Wiseman and Pawlik failed to investigate Plaintiff's the claims [sic] of sexual harassment due to his race. Plaintiff contends that New Jersey Transit has a history of failing to investigate the claims of their minority employees. These employees are treated differently than their white counterparts as was evidenced by the fact that New Jersey Transit Corporation, defendant Wiseman and Pawlik promptly filed a charge against Mr Blackston [sic] for his conduct toward his white counterpart, Defendant McErlane.

Pl.'s Resp. to Joint Mot. at 13.

To state a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001). Since

13

"§ 1981 provide[s] a private cause of action for intentional discrimination only," <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 562 (3d Cir. 2002), Blackston must provide proof that a decisionmaker "selected or reaffirmed a particular cause of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." <u>Personnel Adm'r of Massachusetts v. Feeny</u>, 442 U.S. 256, 279 (1979).

Blackston alleges no facts that, if shown, could constitute such proof. Blackston asserts that "claims made by black employees are generally ignored and investigations are not followed through with." Am. Compl. ¶ 37. Even if we considered this generalization to allege facts sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element," <u>Phillips</u>, 515 F.3d at 234 -- which, to be sure, would require a significant exercise of credulity -- this allegation would still only support a finding of disparate impact, not discriminatory intent on the part of any individual person. Blackston argues that the defendants "have willfully and knowingly failed to investigate Plaintiff [<u>sic</u>] claims of sexual harassment due to Plaintiff's race and the race of the offender," Am. Compl. ¶ 47, but while this statement alleges discriminatory intent, it is also wholly conclusory.

Because Blackston alleges only facts suggesting disparate treatment of black employees at NJT, and his allegations of discriminatory intent on the part of Wiseman merely state legal conclusions, Blackston has not alleged facts supporting "intent to discriminate on the basis of race by the defendant," <u>Brown</u>, 250 F.3d at 797, as § 1981 requires. Accordingly, we will dismiss Count II as to Wiseman, and thus dismiss Count II in its entirety.

D.   <u>Count III: Violation of 42 U.S.C. §§ 2000E et. seq.</u>

In turning to Count III of Blackston's amended complaint, we confront an assemblage of vague allegations that we will do our best to construe intelligently as distinct claims.[2] Blackston opens with the assertion that "Defendants have discriminated against Plaintiff because of his race and sex." Am. Compl. ¶ 59.  He argues that he "has been subjected to unwanted sexual advances and was caused to work in a hostile work environment because Defendants failed to address Defendant McErlane's unlawful sexual conduct in violation of 42 U.S.C [sic]

---

[2]It is important to note that Blackston is <u>not</u> proceeding <u>pro</u> <u>se</u>, and therefore does not get the extra grace the Supreme Court extended in <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

Section 2000E et seq." <u>Id.</u> ¶ 60 (emphasis added).  Moreover,

according to Blackston, "Defendants [<u>sic</u>] actions were done in an

effort to retaliate against Plaintiff because he filed a charge

of discrimination with the EEO."  <u>Id.</u> ¶ 61.  We will construe

these allegations as advancing claims that: (1) defendants

unlawfully discriminated against Blackston on the basis of his

race and gender; (2) defendants subjected Blackston to a hostile

work environment based on his race and gender; and (3) Blackston

was the target of impermissible retaliation.


## 1. <u>Liability of Individual Defendants</u>

We will first briefly consider the liability of the

individual defendants alleged to have committed these violations.

Defendants Wiseman and Pawlik argue that "Congress did

not intend to hold individual employees liable under Title VII,"

so that "Plaintiff cannot maintain his Count Three cause of

action against individual defendants Wiseman and Pawlik."  Joint

Brief at 27.  McErlane echoes this argument, noting that Count

III "should be dismissed as it relates to Defendant McErlane for

the simple reason that Title VII does not provide for individual

liability."  McErlane Brief at 12.  Blackston does not appear to

respond to this argument,[3] other than to assert (without citation
to any case law) that "employees have a coordinate duty to use
all reasonable means available to avoid or minimize injury or
damages following from Title VII violations." Pl.'s Resp. to
McErlane Mot. at 10. Because our Court of Appeals has indeed
held that "Congress did not intend to hold individual employees
liable under Title VII," Sheridan v. E.I. DuPont de Nemours &
Co., 100 F.3d 1061, 1078 (3d Cir. 1996), we will dismiss Count
III as to defendants Pawlik, Wiseman, and McErlane, leaving only
the claims against NJT, Blackston's employer.


2. Unlawful Discrimination

Title VII provides that "[i]t shall be an unlawful
employment practice for an employer . . . to discriminate against
any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such
individual's race, color, religion, sex, or national origin." 42
U.S.C. § 2000e-2(a)(1). To prevail on a Title VII discrimination

_____

[3]Blackston also seems, on this point, to offer some
inapposite arguments regarding the doctrine of qualified
immunity. Pl.'s Resp. to Joint Mot. at 6-7. Because the
question of qualified immunity is distinct from that of
individual liability under Title VII, we will not consider it
further here.

claim, a plaintiff must show that he "suffered a discriminatory adverse employment action which was serious and tangible enough to alter the compensation, terms, conditions, or privileges of [his] employment." Greb v. Potter, 176 Fed. Appx. 260, 263 (3d Cir. 2006) (internal quotation marks omitted). The Supreme Court has defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Blackston alleges no such actions in his amended complaint. While he claims that NJT "forwarded a letter to Plaintiff . . . requesting that he provide a recertification [of his FMLA status] because suddenly the way that Plaintiff was using his leave days became questionable," Am. Compl. ¶ 41, he does not claim that he was deprived of any FMLA benefits. Consequently, Blackston's claim of unlawful discrimination against NJT must fail.

### 3. Hostile Work Environment

The Supreme Court has determined that even without regard to tangible effects, the fact that "discriminatory conduct was so severe or pervasive that it created a work environment

18

abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993). To establish a hostile work environment claim on the basis of any protected characteristic, a plaintiff must show:

> (1) the plaintiff suffered intentional discrimination because of his or her membership in the protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and, (5) the existence of respondeat superior liability.

West v. Phila. Elec. Co., 45 F.3d 744, 753 (3d Cir. 1995) (citing Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990)).

Regarding the first element, NJT notes that "in the context of discrimination claims, conclusory allegations of discrimination, in the absence of particulars, are insufficient." Joint Brief at 16. Blackston responds by postulating that "if plaintiff had been white he would not have been treated in the same manner." Pl.'s Resp. to Joint Mot. at 12.

We first note that while Blackston alleges, in Count III, that he was the object of discrimination on the basis of his sex, he makes no allegations in the course of his entire complaint that McErlane's behavior, or the behavior of any other

19

NJT employee, was motivated by his sex.  To be sure, the Supreme

Court has held that "nothing in Title VII necessarily bars a

claim of discrimination 'because of . . . sex' merely because the

plaintiff and the defendant (or the person charged with acting on

behalf of the defendant) are of the same sex," Oncale v.

Sundowner Offshore Svcs., Inc., 523 U.S. 75, 79 (1998), but that

Court also held that a plaintiff "must always prove that the

conduct at issue was not merely tinged with offensive sexual

connotations, but actually constituted 'discrimina[tion] . . .

because of . . . sex.'" Id. at 81 (emphasis and brackets in

original).  Since Blackston nowhere alleges such discrimination,

any claim under Count III that Blackston was subjected to a

hostile working environment based on sex simply cannot survive.

        As for a hostile working environment based on race,

Blackston does allege that "claims made by black employees are

generally ignored and investigations are not followed through

with," Am. Compl. ¶ 37, and that the defendants "have willfully

and knowingly failed to investigate Plaintiff [sic] claims of

sexual harassment due to Plaintiff's race and the race of the

offender." Id. ¶ 47.  Because the first statement alleges only

disparate impact, and the second is merely a conclusory

allegation of discriminatory intent, neither fulfills the first

element of a claim of a hostile working environment based on race.

The hostile working environment claim must also fail given the absence of pervasiveness. The only detail Blackston alleges has to do with the August 4, 2008 incident in the cafeteria of the Morrisville railyard. This falls short of the "pervasive and regular" discrimination our Court of Appeals had in mind in West and Andrews, above. We will therefore dismiss Count III insofar as it alleges a hostile work environment claim under Title VII.


4.    Impermissible Retaliation

Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this chapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3)

there was a causal connection between her participation in the protected activity and the adverse employment action." Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995).

The Supreme Court has explained that because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006). As a result, a plaintiff claiming retaliation under Title VII need not show a "serious" and "tangible" "adverse employment action," Greb, 176 Fed. Appx. 263, as with a substantive discrimination claim, but instead need only show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (internal quotation marks omitted). The retaliation Blackston alleges -- NJT's filing of a charge against Blackston following his drafting of a letter to the New Jersey Governor and his filing of an internal claim with NJT's EEO Office, and NJT's questioning of Blackston's use of FMLA leave, Am. Compl. ¶¶ 38-39

-- might well have dissuaded a reasonable worker from making a charge of discrimination.  Consequently, though Blackston's claim of substantive discrimination under Title VII failed because he did not allege tangible and serious adverse employment action, his claim of retaliation in violation of Title VII, liberally read, nevertheless passes muster in alleging materially adverse employment action.

But Blackston's retaliation claim still founders, though on different shoals.  To demonstrate the first element of such a claim -- that the plaintiff "engaged in activity protected by Title VII," Nelson, 51 F.3d at 386 -- "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII."  Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir. 2005).  To put it differently, "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected."  Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008).

The activity Blackston opposed consisted of McErlane "humping, grinding, and rubbing his penis and genitals against his back mimicking sexual acts."  Am. Compl. ¶ 20.  This behavior

23

could have constituted unlawful discrimination if it amounted to the creation of a hostile or abusive work environment, satisfying the five _Andrews_ elements enumerated above. But Blackston alleges <u>no</u> discriminatory intent on the part of McErlane. In the absence of such discriminatory animus, McErlane's behavior becomes only an obnoxious species of "male-on-male horseplay," rather than "discriminatory conditions of employment." <u>Oncale</u>, 523 U.S. at 81 (1998) (internal quotation marks omitted). No reasonable male in Blackston's position could have considered this single instance of McErlane's coarse behavior, if unaccompanied by discriminatory intent, to qualify as the creation of a hostile work environment under Title VII.

We do not question Blackston's good faith in bringing his complaints before the New Jersey Governor and NJT's EEO Office. Blackston may have felt himself aggrieved, and viewed the filing of a complaint as the correct avenue for seeking redress. But a retaliation claim under Title VII requires not only that the plaintiff undertake his initial activity in good faith, but that this activity <u>objectively</u> qualify for Title VII protections. Because Blackston's amended complaint is devoid of any allegation of invidiously discriminatory motive giving rise to McErlane's tasteless actions that August day in 2008, his own

behavior following these actions does not warrant Title VII protection.  Blackston's retaliation claim against NJT must therefore be dismissed.


     E.   <u>Violations of the Pennsylvania Human Relations Act</u>

     We have jurisdiction over Blackston's claims of alleged violations of Pennsylvania state law only through our supplemental jurisdiction, which we may exercise only "as long as there is a federal claim which gives the court jurisdiction." <u>Ambromovage v. United Mine Workers of America</u>, 726 F.2d 972, 989 n.48 (3d Cir. 1984).  Having dismissed all of Blackston's federal claims at the threshold, we decline to exercise our supplemental jurisdiction over his remaining state claims.  As a result, we will dismiss in Count IV without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).